# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALEX MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV-16-940-R |
| | ) |
| SCOTT JAY, Beckham County | ) |
| Sheriff, and JENIFER SHEFFIELD, | ) |
| Supervising Correctional Cook, | ) |
| Beckham County Jail, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff, appearing *pro se*, filed this action alleging violation of his constitutional rights with regard to his detention in the Beckham County Jail. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the matter was referred to United States Magistrate Judge Suzanne Mitchell for preliminary review. On November 22, 2016, Judge Mitchell issued a Report and Recommendation wherein she recommended that the Defendants' Motion to Dismiss (Doc. No. 5) be denied. The Court adopted in part the Report and Recommendation, but disagreed with Judge Mitchell regarding the adequacy of Plaintiff's allegations against Defendant Sheffield, and ordered that Plaintiff file an amended pleading if he desired to do so. (Doc. No. 29). Following the filing of Plaintiff's Amended Complaint, Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 45). Judge Mitchell issued a Report and Recommendation wherein she recommended denial of the motion. She made additional recommendations with regard to certain motions filed by Plaintiff. The matter is currently before the Court on Defendants' timely objection to the

Report and Recommendation, giving rise to the Court's obligation to undertake a *de novo* review of those portions of the Report and Recommendation to which Defendants make specific objection. Having conducted this *de novo* review, the Court finds as follows.

Defendants first assert that Plaintiff has failed to state a claim for deprivation of his free exercise rights under the First Amendment, because even accepting his allegations as true, he alleges at most *de minimis* interference with his rights, as the denial of his halal diet was only temporary. The allegations in the Amended Complaint are similar to those of the original state-court petition, which the Court addressed previously. Mr. Moore again alleges that upon detention at the Beckham County Jail he requested a halal diet, consistent with his faith, but agreed to accept a kosher diet, which was the only option and an acceptable alternative. He alleges that between January 4 and 10, 2015, he ate meals he believed were kosher and that bore "kosher" stickers. However, on January 10, 2015 an unidentified detention officer informed him that the meals were in fact not kosher but had been mislabeled to deceive him. For the next four days Plaintiff refused to eat because the food offered to him was not consistent with his religious beliefs. Thereafter Plaintiff contends that when he spoke to the sheriff about the issue, the sheriff stated the jail did not serve "Muslim food."

The Court previously noted the twist in Plaintiff's allegations that it believes removes it from certain of the *de minimis* violation cases cited by Defendants, that is, the alleged active deception of Mr. Moore regarding the nature of the food he was presented. Nothing in the instant motion convinces the Court that either its prior determination or Judge Mitchell's conclusion in the July 14, 2017 Report and Recommendation were in

error. This Court concludes that this allegation, coupled with the duration of time during which Plaintiff alleges he was denied compliant food, is sufficient to state a claim for deprivation of his First Amendment rights. Accordingly, the Court turns to Defendants' motion for summary judgment, where the viability of Plaintiff's claims depends, not on the assumed truth of his allegations, but upon the evidence he has submitted to the Court.

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a summary judgment motion, the Court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local*, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." *Id*. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Burke*, 462 F.3d at 1258 (internal quotation marks and citations omitted). Additionally, the Court cannot consider hearsay contained in affidavits on summary judgment because such statements are inadmissible at trial in any form. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); *see also Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment").

Defendants based their motion in part on the defense of qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, ––U.S. ––, 132 S. Ct. 2088, 2093 (2012)(citing *Ashcroft v. Kidd*, ––U.S. ––, 131 S. Ct. 2074, 2080 (2011)). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The Court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The evidence before the Court is comprised of: (1) the Special Report filed by Defendants, which includes their affidavits containing their recollections of how Mr. Moore was fed during his time in the Beckham County Jail; (2) Plaintiff's verified Amended Complaint (Doc. No. 33); and (3) his verified Reply to Defendants Scott Jay and Jennifer Sheffield's Reply in Support of Their Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. No. 58). Plaintiff's initial response to the motion, which he denoted as a "Reply," was not verified or signed under penalty of perjury, and accordingly, cannot be considered an affidavit for summary judgment purposes. (Doc. No. 53). Plaintiff did attempt to obtain discovery, but his attempts were denied pending the outcome of the motion. Additionally, in light of Judge Mitchell's recommendation, it appeared Plaintiff did not need discovery to avoid Defendants' motion.

The Court notes that Defendants correctly point out that Plaintiff failed to comply with the Court's Local Civil Rules in filing his *pro se* response to their motion. In his initial reply, Mr. Moore did not specifically respond to or address the undisputed facts in the manner contemplated by the Local Civil Rules. (Docket No. 53). The Local Civil Rules of the United States District Court for the Western District of Oklahoma provide that "[t]he brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section responding, by correspondingly numbered paragraph, to the facts that the movant contends are not in dispute and shall state any fact that is disputed. Separately, the brief in opposition may, in concise, numbered paragraphs, state any additional facts the nonmovant contends preclude judgment as a matter of law. The nonmovant shall not present facts that are not material to an issue raised by the movant." LCvR 56.1(c). Pursuant to the local rules, the Court could deem Defendants' material facts confessed. LCvR 56.1(e). However, a review of his brief reveals that Plaintiff clearly indicates by page and line number those facts set forth in the motion that he disputes and as a result, the Court has no difficulty assessing the allegedly disputed facts from his perspective. Furthermore, because Plaintiff is *pro se*, the Court has considered the facts Mr. Moore attempts to controvert in the body of his brief to the extent such are supported by either his verified Amended Complaint or his sur-reply.

Plaintiff's claims are premised on his rights under the First Amendment, which is applicable to the states via the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Prisoners "'retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis*, 500

F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). For example, "[t]his circuit recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (reversing dismissal of First Amendment claims stemming from a denial of Jewish inmates' request for a kosher diet). In order to prevail on his claim alleging that Defendants denied him his right to the free exercise of religion, Plaintiff will be required to present proof that each defendant "substantially burdened" his religious beliefs through intentional interference. *Gallagher v. Shelton*, 587 F.3d 1063, 1069-70 (10th Cir. 2009). Plaintiff must present evidence of intentional interference, negligence is not sufficient.

> Numerous courts, including the Tenth Circuit, have recognized that a prison official's negligence in complying with a prisoner's religious diet does not violate the constitution. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir.2009) (holding that isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir.2006) (holding that plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983") (citing *Daniels*, 474 U.S. at 330); *Colvin v. Caruso*, 605 F.3d 282, 293–94 (6th Cir.2010) (holding that negligence by prison officials in implementing kosher-food requirements is not actionable under the First Amendment). Here, the court finds plaintiff has failed to show more than negligence in the one instance of alleged cross-contamination of his food tray.

*Hemphill v. Jones*, 2011 WL 1304876, at *3 (E.D. Okla. Mar. 31, 2011).[1]

As noted, Defendants' motion for summary judgment relies on the Special Report submitted pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The report contains an affidavit from Defendant Jennifer Sheffield wherein she states that Plaintiff indicated

---

[1] Defendants present issues that appear directed to questioning the sincerity of Plaintiff's religious beliefs and whether he actually adhered to a halal or kosher diet. However, they do not directly raise the issue, and the undersigned, like Magistrate Judge Mitchell, declines to construct arguments on their behalf from their indirect references.

on his intake sheet that he required a special diet and he agreed to accept kosher in place of halal, that he automatically would have been given a no-pork diet. She contends she was informed by an unidentified detention officer that Mr. Moore was not satisfied with the no-pork option, although she does not indicate why he was allegedly dissatisfied. She does state, however, that during her tenure before Mr. Moore, she equated a kosher diet with a non-pork diet.[2] She denies purposely or knowingly providing Plaintiff with a falsely represented kosher meal or advising a detention officer to make false representations to Plaintiff. Defendant Scott Jay, sheriff during the relevant time, asserts via affidavit that he was made aware of Plaintiff's contention that the kosher meals provided were not sufficient and that he suggested Ms. Sheffield contact other Oklahoma facilities for additional information.[3] He also generated a new policy in response to Plaintiff's dietary requests, although that policy is not at issue in this case.[4] Jay additionally avers that he never purposely or knowingly provided Plaintiff with a falsely represented kosher meal.

---

[2] A kosher diet is one that follows a number of dictates from Jewish law, including the exclusion of pork. It also contains mandates regarding food preparation and how animals to be consumed are slaughtered. *See* http://www.wellness.com/reference/health-and-wellness/kosher-diet. Plaintiff does not specifically identify in the Amended Complaint in what manner the meals he received were not truly kosher. He did state in his unverified response to Defendants' motion that jello was served and that all meats, including pork, were cooked together. Doc. No. 53, p. 5. He also states that "kosher does not mean a nonpork diet." Doc. No. 58, pp. 7 and 8. The Court acknowledges that Plaintiff was not seeking a kosher diet, but agreed to accept a kosher diet as an adequate substitute for a halal diet.

[3] In the Amended Complaint Plaintiff alleges he spoke with Defendant Jay on January 14, 2016, about the inadequacy of the kosher meals. In his unverified Reply (Doc. No. 53, p. 14), Plaintiff alleges that Defendant Jay responded to his statement that he was Muslim and required a halal diet by stating, "we don't serve Muslim food." (Doc. No. 33). Although at the motion to dismiss stage the Court construed the statement as indicative of Defendant Jay's knowledge and intent, Plaintiff's response to the motion for summary judgment undercuts this construction entirely. Plaintiff contends the statement "was not meant to be in any way disgraceful to the plaintiff in his religion but to mean they do not serve halal." Doc. No. 53, p. 14. Plaintiff attempts to interpret the statement to mean that Defendant Jay knew the jail did not serve halal or kosher; however, the inference does not logically extend to kosher food.

[4] Defendants discuss events occurring after January 14, 2016, however, at this time this case is limited in scope to events that transpired between January 4 and January 14, 2016. The subsequent developments may provide insight into Defendants' knowledge and intentions during the relevant time period, but are not themselves at issue herein.

The essence of the case at this juncture is whether believing a non-pork diet was tantamount to a kosher diet (as an appropriate substitute for a halal diet), is sufficient to avoid liability for violating Plaintiff's rights under the free exercise clause. The Court disagrees with Judge Mitchell's conclusion that Plaintiff has presented sufficient evidence to establish conscious or intentional interference with Plaintiff's rights. Plaintiff's allegations regarding Defendants' knowledge are either based on the hearsay statement of an unidentified detention officer or conclusory. Defendants' evidence establishes that for the time between Plaintiff's initial detention in Beckham County, January 4, 2016 and his conversation with Defendant Sheffield on January 10, 2016, that she operated under the misapprehension that the sole requirement of a kosher diet was that the meal not contain pork. Without evidence to the contrary, the Court concludes that, at most, the evidence supports a claim for negligence, which is not actionable under § 1983 as it relates to the period between January 4 and January 10, 2016. As noted by the court in *Gallagher*, "the fact that the utensils were not properly washed indicates that the defendants imperfectly implemented the kosher requirements, or were even negligent in implementing his kosher diet. But there is no basis to conclude that any of the defendants deliberately contaminated the kosher utensils, in violation of Gallagher's right to free exercise of religion, or that defendants repeatedly violated kosher requirements." 587 F.3d at 1070. Additionally, the details of events that transpired between January 10 and January 14, 2016, are not adequately presented so as to permit the Court to draw any inference regarding the type of meals presented to Plaintiff and whether those meals substantially burdened the exercise of his religion.

Although the Court disagrees with certain of Judge Mitchell's conclusions, Defendants are not entitled to summary judgment, because Plaintiff has not been permitted to conduct discovery. Plaintiff states in his verified Reply (Doc. No. 58) that he possesses admissible evidence and is "more than happy to show the evidence against the defendants, to this Court," but he did not include such evidence in response to Defendant's motion.[5] Additionally, he has filed a number of discovery-related motions that Judge Mitchell recommended denying because discovery would proceed upon resolution of the Defendants' motion. The Court hereby DENIES the motion to dismiss, and holds the motion for summary judgment in abeyance pending the submission of evidence by Plaintiff. To that end, the Court hereby grants the parties ninety days in which to conduct discovery. Plaintiff shall file a supplemental response to the Defendant's motion within one hundred and twenty days of this Order. Defendants may file a reply in support of their motion within seven days of Plaintiff's response. Plaintiff may not file a sur-reply without leave of Court. Additionally, because the Court has now denied the motion to dismiss, Defendants shall file an answer.

Plaintiff's Motion to Strike Motion to Dismiss or Motion for Summary Judgment (Doc. No. 46) is DENIED as recommended by Judge Mitchell. His Motion to Obtain Receipts (Doc. No. 47), Motion to Retain Videos (Doc. No. 49), Motion for Order to Hold Sheriff Derek Manning to Release Affidavits from Jail Employees (Doc. No. 50), Motion

---

[5] He also states that he has evidence to support his claims and that Defendants are lying, but will submit it for the Court's eyes only. Plaintiff cannot limit production of his evidence to the Court, Defendants are entitled to see the evidence upon which Plaintiff relies, and the time for revelation of evidence is in response to a motion for summary judgment.

to Obtain Records of Transactions of the Defendants and People Defendants Called (Doc. No. 51), and Motion for Court Order to Hold Sheriff Derek Manning to Release the Plaintiff's Jail File (Doc. No. 52) are DENIED as recommended by Judge Mitchell. Finally, the Court DENIES Plaintiff's Motion for Conference Between Plaintiff and Defendants (Doc. No. 48), as the Court has authorized discovery as set forth above. Plaintiff's Motion for Fast and Speedy Trial is DENIED (Doc. No. 60). Plaintiff's Motion for Request that Any Relief Awarded by this Court be Given to Plaintiff's Agent of Power of Attorney is DENIED AS PREMATURE (Doc. No. 65). Plaintiff's Second Request for a Magistrate Judge is DENIED; Defendant did not execute the consent. (Doc. No. 66). Plaintiff's Request that the Court consider his Amended Complaint as an affidavit is GRANTED. (Doc. No. 67). Plaintiff's Motion for Response From Court is DENIED AS MOOT. (Doc. No. 72). Plaintiff's Motion for Request for Information and Order" (Doc. No. 57), wherein he requests alternative dispute resolution and his "Motion for Ogritory Hearing" (Doc. No. 59), which appears to be a request for a settlement conference, are DENIED WITHOUT PREJUDICE to seeking such conference at a later date. Defendants have not yet had an opportunity to plead any affirmative defenses nor have they concurred that such a conference would be worthwhile at this time.

IT IS SO ORDERED this 2nd day of March 2018.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE